## STATE OF MARYLAND *v.* DAVID LAWRENCE LONG AND RAYMOND NELSON, JR.

[No. 162, Initial Term, 1967.]

328

*Decided May 25, 1967.*

The cause was argued before MORTON, THOMPSON, and ORTH, JJ., and MENCHINE, J., Associate Judge of the Third Judicial Circuit, specially assigned, and PITCHER, J., Associate Judge of the Fifth Judicial Circuit, specially assigned.

*Franklin Goldstein, Assistant Attorney General,* with whom were *Robert C. Murphy, former Attorney General, Leonard T. Kardy, State's Attorney for Montgomery County,* and *John C. Hancock, State's Attorney for Charles County,* on the brief, for appellant.

*John F. McAuliffe* for appellee Long, and *Robert C. Heeney* for appellee Nelson.

ORTH, J., delivered the opinion of the Court.

This is an appeal by the State of Maryland from an order of May 23, 1966 of Chief Judge J. Dudley Digges, presiding in the Circuit Court for Charles County, dismissing an indictment charging the appellees with rape, upon a motion to dismiss filed by each appellee alleging denial of a speedy trial.

The chronological sequence of events material to this appeal is as follows:

October 10, 1965 —Appellees arrested on charge of rape.

October 22, 1965 —Preliminary hearing in the People's Court of Silver Spring. Held for action of the Grand Jury and bond denied.

November 15, 1965 —Appellees and Earle Agustus Little, Jr., not a party to this appeal, indicted on charges of rape, assault with intent to rape and assault of Mary Arden Batch.

November 29, 1965 —Appellees and Little arraigned before the Circuit Court for Montgomery County. Appellees plead not guilty; Little stood "moot." Trial date set for December 15, 1965.

December 6, 1965 —Little filed plea of not guilty by reason of insanity. Order of court for examination.

December 7, 1965 —Petition for bond filed by each appellee.

December 14, 1965 —Petitions denied after hearing.

December 23, 1965 —Motion for speedy trial filed by each appellee.

February 17, 1966 —Order of court to transport Little to Montgomery County.

March 28, 1966 —Motion for discovery and inspection filed by each appellee.

April 1, 1966 —Earle A. Little, Jr. filed suggestion for removal. Order of court that indictment of Little be transmitted to Charles County for trial.
State filed suggestion for removal of Little and appellees. Order of the court that case of Little and appellees be transferred to Charles County for trial.

| May 11, 1966 | —Motion to dismiss the indictment filed by each appellee. |
| May 12, 1966 | —Answer to motions for discovery and inspection filed by State. |
| May 19, 1966 | —Motion for severance filed by each appellee. |
| May 20, 1966 | —Motion to dismiss the indictment filed by Little. Hearing on motions to dismiss, motions for severance and motions for discovery. Motion to dismiss overruled as to Little. |
| May 23, 1966 | —Motion to dismiss as to each appellee granted and indictment dismissed as to each appellee. |

It appears that the case as to appellees was not tried on December 15, 1965, the trial date originally set, because the State had it taken out of the assignment without consulting counsel for appellees. The State proffered no specific reason why this was done. It further appears that a trial date of April 19, 1966 had been set, although the record does not disclose when it was set. The State and counsel for appellees agree that it was prior to March 28, 1966 on which date each appellee filed a motion for discovery and inspection. It also appears that a trial date of May 24, 1966 was set and that counsel for appellees were so notified by letter of April 22, 1966 from an Assistant State's Attorney. This sequence of events is as disclosed by the record before us, including a transcript of the proceedings at the hearing on the motions to dismiss, made part of the record by agreement of counsel. No testimony was presented at the hearing, either orally or by affidavit.

The right to a speedy trial involves a nice balancing of two rights of society—the primary obligation to ascertain the guilt or innocence of an accused, and the accused's right to have the accusation determined without oppressive delay. See *Cohen v. U. S.*, 366 F. 2d 363 (1966) 9th Circuit. The right is guaranteed by the State and Federal constitutions. Article 21 of the Maryland Declaration of Rights provides: "That in all criminal

prosecutions, every man hath a right * * * to a speedy trial * * *." Amendment VI to the Constitution of the United States provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, * * *." Although the Sixth Amendment to the Federal Constitution applies to and limits the powers of the Federal government, cases involving a violation of a basic or fundamental right will be protected under the due process clause of the Fourteenth Amendment. "Criminal proceedings arising in a State court, involving such rights, flow through the due process clause of the Fourteenth Amendment, become absorbed in federal process, and will be reviewed by the Supreme Court." *Harris v. State,* 194 Md. 288 (1950). Neither Article 21 nor the Sixth Amendment is implemented by statute but both are self executing. *Jones v. State,* 241 Md. 599 (1966). Nor is the phrase "speedy trial" defined in the Federal Constitution or the Maryland Declaration of Rights.

The Court of Appeals in *Jones,* at page 608 quotes 22A C.J.S. *Criminal Law* §467 (4):

> "A speedy trial is, in general, one had as soon as the prosecution, with reasonable diligence, can prepare for it; a trial according to fixed rules, free from capricious and oppressive delays, but the time within which it must be had to satisfy the guaranty depends on the circumstances."

Many states having constitutional provisions similar to that of Maryland have statutes which establish a time limit in which an accused must be tried. Usually under a statute imposing upon a state the duty to bring the accused to trial within a designated time, the state must take the initial action. *Harris v. State, supra.* Appellees contend that Maryland has enacted a statute imposing upon the State a time within which an accused must be brought to trial. They cite Maryland Code, Art. 27, §§ 616A-616S and urge that this statute provides that any prisoner in this State has an absolute right to demand trial on a pending indictment and to be tried within 120 days of such demand unless on good cause shown, after a hearing, the court decides that a further delay is reasonably required. We do not agree. The statute to which they refer is entitled "Detainers". Sections

616A-616R, both inclusive, pertain to interstate detainers and section 616S pertains to intrastate detainers. In both instances, the provisions of the statute apply only when a detainer has been lodged against a prisoner who has entered upon a term of imprisonment. The statute provides for specific procedures to be followed before the outstanding indictment is to be dismissed. It is clear that the appellees do not come within the provisions of the statute and even if they did, the necessary procedural steps have not been taken by them in order to require a dismissal of the indictments against them. Appellees refer to the title of the Act (Senate Bill 361, Chapter 627, Laws of Maryland, 1965) and particularly to the phrase "AN ACT * * * to declare the policy of this state toward charges outstanding against a prisoner * * *" in support of their contention that the times specified for bringing trial designated in the act apply to them. The phrase cannot be considered out of context and when examined within the proper frame of reference of the entire title and the provisions of the statute, there is no doubt that the legislative intent was not that the statute apply to an accused awaiting trial, even though incarcerated, but only to prisoners who are serving a sentence and against whom a detainer had been placed. Appellees next urge that, even if the statute is not directly applicable to them, the designation of time for trial therein specified should be applied to them by analogy. The legislature has not established a specific time within which those accused of crime must be brought to trial except in the specific instances set forth in Art. 27, §§ 616A-616S. While it is within the legislative power to provide that *all* those accused of a crime must be tried within a designated time, provided such time does not infringe the constitutional right to a speedy trial, the legislature of this State has not done so directly and we find that it has not done so by implication in Art. 27, §§ 616A-616S.

While a statutory mandate imposes upon the state the duty to bring the accused to trial within a designated time, the Federal Constitution and the Constitution of this State accord the *right* to a speedy trial. If an accused does not demand the right, he waives it. The Court of Appeals stated in *Harris v. State, supra,* that the right to a speedy trial is a personal right and, if an accused fails to demand such a trial, he waives the right to

it. It has affirmed the rule numerous times. *Bonner v. Director,* 237 Md. 445 (1965) ; *Keyes v. State,* 236 Md. 74 (1964) ; *Dyer v. Warden,* 214 Md. 626 (1957) ; *Tutt v. Warden,* 199 Md. 691 (1952) ; *Thompson v. Warden,* 198 Md. 668 (1951). The Court of Appeals in *State v. Murdock,* 235 Md. 116, 123 quoted *State v. McTague,* 216 N. W. 787 (Minn.) which it had cited with approval and quoted from in *Harris v. State, supra:*

> "The constitutional and statutory provisions for a speedy trial are for the protection of the defendant, but that does not mean that the state is the only one that may initiate action. There is really no reason for the courts to free an accused simply because a dilatory prosecutor has 'gone to sleep at the switch' (no reference to counsel in this case) while the defendant and his counsel rest in silence. We hold that these solicitous provisions are not to be used as offensive weapons, but are for the benefit of defendants who claim their protection. They are a shield, and, as said in *State v. Rowley,* 198 Iowa, 613, * * *, they 'must not be left hanging on the wall of the armory.' *There is no just reason why an accused should not demand a trial, resist a postponement, or take some action indicating to the court that he believes he is being deprived of his statutory or constitutional rights as a foundation for his application for a dismissal.* The right to a speedy trial is valuable, and it will be zealously guarded by the courts with resolute courage. It is for the protection of personal rights, not to embarrass the administration of the criminal law nor to defeat public justice. It is a privilege to the accused. If he does not claim it, he should not complain. It may be waived. The statute is a means of enforcing the constitutional provision. The spirit of the law is that the accused must go on record in the attitude of demanding a trial or resisting delay. If he does not do this, he must be held, in law, to have waived the privilege. Until he has so acted, the state is not called upon to establish the existence of the statutory 'good cause.' *State v. Artz,* 154 Minn. 290, 191 N. W. 605 ; *State v. Dinger,* 51 N. D. 98, 199 N. W. 196

and cases cited; 44 L.R.A. (N. S.) 871, note. Upon the record, defendant was not entitled to the relief sought." (Emphasis added)

Even when the accused has gone on record as in the attitude of demanding a trial or resisting delay, he cannot thereafter sleep on his rights. In *Murdock,* the Court said, page 121 :

"And, even where a defendant has made a proper demand for trial or has moved for his discharge or dismissal of the proceedings against him, this does not necessarily prevent a ruling that because of subsequent conduct he waived his right to a speedy trial. * * * Of course, the delay in completing a prosecution must not be purposeful or oppressive."

See *United States v. Patrisso,* 21 F.R.D. 363 (S. D. N. Y., 1958), which, with *Harris v. State, supra,* controlled the decision in *Murdock.* It has long been recognized that the term "speedy trial" is a relative one. *United States v. Ewell,* 383 U. S. 116 (1966) ; *Beavers v. Haubert,* 198 U. S. 77 (1905) "[T]he varied circumstances surrounding particular cases are innumerable, and, for the main part, unforeseeable, * * * with the determination of the question as to whether or not an accused has been denied a speedy trial depending upon the facts of each particular case." *Jones v. State, supra,* page 608. So, as the Court said in *Jones,* while there is little difficulty in stating the law relating to the alleged denial of a speedy trial, there is considerable difficulty, at times, in applying the law to the circumstances of a particular case.

Having the principles herein set forth in mind, we apply to them the facts of the instant case. It is clear that the appellees demanded a speedy trial by their motions of December 23, 1965. The questions are, therefore, did their subsequent conduct waive the right so demanded and was any delay purposeful or oppressive? The lower court said that it knew of no authority which says that, after a formal demand, a defendant only gets the right to a speedy trial if he files a motion every day. Nor do we know of any authority to this effect. But we do not agree, without qualification, that "one motion ought to suffice until it has served its purpose." The original trial date of December

15, 1965, set at the arraignment of the defendants appears to have been set arbitrarily as a matter of usual procedure. The co-defendant, Little, stood moot on arraignment. On December 6, 1965 he filed a plea of not guilty, by reason of insanity and on the same date an examination to determine that issue was ordered. No request for severance was made at that time nor on December 23rd when each appellee filed a motion for a speedy trial. (In fact, no motion for severance was made until May 19, 1966). Obviously, a joint trial could not be had on December 15, 1965 for Little was not ordered transported back to Montgomery County until February 17, 1966, after he was determined to be sane. Thereafter, sometime before March 28, 1966, trial was set for April 19th. Although in their brief, appellees state that there was a telephone conversation with the Deputy State's Attorney about March 20, 1966 concerning a suggestion for removal and that they refused to follow the State's suggestion that they file a suggestion for removal as such action might constitute "a waiver of the rights which had accrued" to them by reason of their demand for a speedy trial, "which rights appellees were particularly not willing to waive," this is not a part of the record. We deem it significant that on March 28th, subsequent to the time the trial date of April 19th was set, each of the appellees filed a motion for discovery and inspection which made no mention of the motions for a speedy trial. On April 18th, counsel for appellees wrote the State's Attorney for Montgomery County, detailing the history of the cases and suggesting that in view of the failure to provide a speedy trial the State voluntarily abandon the prosecutions. Although the letter is not part of the record, apparently, there was no suggestion that appellees were ready for trial or request made that trial be held forthwith. An assistant state's attorney replied by letter of April 22nd, simply stating that the trial had been set for May 24th. We also deem significant the statement that each appellee made in his motion for severance on May 19th, subsequent to the motion to dismiss filed by each of them on May 11th. Nelson stated in his motion:

"That by filing of this Motion he in no way desires to prejudice his Motion to Dismiss for want of a speedy trial which has hereinbefore been filed, and that fur-

thermore *he is ready for trial if the State gives him the information requested in his Motion for Discovery which will be shortly argued before this Court."* (Emphasis supplied)

Long, in his motion, made clear that it was to be considered without prejudice to his motion to dismiss and stated:

"That *if the State will furnish the information requested by this defendant in his Motion for Discovery, in sufficient time to allow him to complete his investigation, he will be prepared to proceed to trial on the 24th day of May, 1966,* if this Court denies his Motion to Dismiss, and he does not file this Motion for purposes of harassment or delay." (Emphasis supplied)

The appellees' lack of attempt to obtain the trial requested in their motions for a speedy trial filed more than three months before and their filing of the motions for discovery and inspection, when they knew that trial had been set for April 19th, gave the reasonable implication, at least, that they were then not ready for trial. Their statements in the motions for severance filed on May 19th appear to make the implication a certainty. Appellees urge on appeal that the motions for discovery and inspection were filed as a trial tactic, "to pin the State down on its proof, and be certain it had all material information," and that they were, in fact, ready for trial. We can only point out that each appellee in his motion for severance stated that his readiness for trial was contingent upon the State supplying the information requested in the motion for discovery. Long was even more specific, stating that "he will be prepared to proceed to trial on the 24th day of May, 1966" if the information as requested was given him "in sufficient time to allow him to complete his investigation." The lower court, in its opinion, did not discuss the motions for discovery and inspection. It found that once the request for a speedy trial was filed, the State, thereafter, had "an obligation to go ahead," and that, in effect, this obligation was indelibly impressed on the State, if the State had been afforded the time "to reasonably prepare for the case." We feel that the discovery motions were material to the question of

waiver. The motions for discovery and inspection were answered by the State on May 12th, agreeing to permit appellees to inspect, copy or photograph all documents and tangible objects obtained from the appellees or from others by seizure or process, permitting inspection of the transcript of the preliminary hearing, if, contrary to the understanding of the State, a copy was not in appellees' possession, setting forth the substance of the oral statements of Little and each appellee, listing the names and addresses of the witnesses which the State intended to call to prove its case in chief, and appending a copy of a seven page report of the F.B.I. giving the result of the analysis made of items forwarded to the F.B.I. by the police. The State excepted to any other demands made in the motions. The record does not show that an order of Court was passed as requested in the discovery motions and therefore no time was specified for compliance by the State. See Maryland Rule, 728. Nor does the record disclose that appellees made any demand for an earlier answer to the motions. Their request of the State to abandon the prosecutions made by the letter of April 18th and the motions to dismiss the indictments filed May 11th indicate that appellees were relying on the dismissal of the indictments, which if granted, as it was, obviated any necessity for their being prepared for trial. Appellees contend that the matters of discovery and inspection could have been resolved at a hearing set for April 7th, but that this was precluded by the suggestion for removal filed by the State on April 1st. Appellees urge that there was no reason why the State could not have furnished the discovery information in time for trial on April 19th, had it not filed for removal, suggesting that if the State found it necessary to exercise its right of removal it should have done so earlier. The lower court also stated that there was no satisfactory suggestion why the State could not have had the case removed earlier and indicated that it was done on April 1st to preserve a joint trial of all three of the accused. Little filed a suggestion for removal on the same day as that filed by the State. Both were filed within the requirements of Article IV, § 8 of the Maryland Constitution which gives each party an absolute right of removal in criminal cases involving capital punishment. *State v. Simms,* 234 Md. 237 (1964). In *Simms* the Court said, page 240:

"* * *[I]t is settled law that the right to remove, where granted, continues until the jury is sworn."

We do not go beyond the suggestion filed by the State under affidavit that there could not be a fair and impartial trial in Montgomery County. In argument on this appeal, the State does not deny that it felt it advisable and in the interest of justice to try all three accused together. While a removal of Little would have severed him from the trial of the appellees, the first action taken by the appellees, by the record, to show they objected to a joint trial of all the accused, was the motions for severance filed May 19th. The lower court found that although the State had an absolute right to remove a capital case, it could do so without endangering the prosecution only if rights of the appellees were not denied by the removal. It found that their rights were denied. Mere delay in filing a suggestion of removal does not constitute conduct amounting to estoppel even assuming that estoppel could be invoked against the State. *State v. Simms, supra.* And we need not decide whether the right of removal guaranteed by the Maryland Constitution can be restricted as the lower court suggested for we do not find that the rights of the appellees were denied. We do not think that the removal by the State for the reasons set forth in its suggestion, which is all the record discloses, can be said to have caused a delay that was unreasonable, purposeful or oppressive. We see nothing in the record which would have precluded a trial on April 19th, if appellees, contrary to the statements made by them subsequently in their motions for severance, were ready for trial and had made timely demand upon notice of the removal.

We are not unmindful of the fact that the appellees had been denied bail and were incarcerated from the time of their arrest on October 10, 1965. They were charged with a capital offense and the allowance of bail was a matter within the sound discretion of the trial court. *Swift v. State,* 224 Md. 300 (1961). We do not find from the record that there was an abuse of this discretion, even if the matter were before us. While incarceration is relevant to a consideration of whether delay is unreasonable or oppressive, we do not think it, in itself, is controlling in a determination of whether the right to a speedy trial was denied. In *Smith v. United States,* 331 F. 2d 784 (1964) the ac-

cused could not make bail set at $2,500 and had been in the District of Columbia jail for one year and two months, including nearly six months awaiting trial. The court found that right to a speedy trial had not been denied.[1] Nor is the length of time between arrest and trial controlling. In *United States v. Ewell*, 383 U. S. 116, 86 S. Ct. 773, 15 L. Ed. 2d 627, 630-631, the Court said:

"We cannot agree that the passage of 19 months between the original arrests and the hearings on the later indictments itself demonstrates a violation of the Sixth Amendment's guarantee of a speedy trial."

In the instant case the time between arrest and trial, had trial gone forward on May 24, 1966, would have been about seven and one-half months. The Court continued in *Ewell*, pages 630-631:

"This guarantee is an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself. However, in large measure because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace. A requirement of unreasonable speed would have a deleterious effect both upon the rights of the accused and upon the ability of society to protect itself. Therefore, this Court has consistently been of the view that 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice.' *Beavers v. Haubert*, 198 U. S. 77, 87, 49 L. ed. 950, 25 S. Ct. 573. 'Whether delay in completing a prosecution * * * amounts to an unconstitutional deprivation of rights depends upon the circumstances. * * * The delay must not be purposeful or oppressive,'

---

1. The case, however, was reversed on other grounds.

*Pollard v. United States,* 352 U. S. 354, 361, 1 L. ed. 2d 393, 399, 77 S. Ct. 481. '[T]he essential ingredient is orderly expedition and not mere speed.' *Smith v. United States,* 360 U. S. 1, 10, 3 L. ed. 2d 1041, 1048, 79 S. Ct. 991."

"We do not assess the resolution of the issue simply in terms of 'fault.' Rather, weighing all of the 'circumstances' as we are bound to do, there is not on this record a showing of such oppression or of purposeful vexations or arbitrary action as amounts to a deprivation of the appellees' constitutional right." *Smith v. United States, supra,* page 789. Even assuming that the State in part had been responsible for the delay, the tactics of the appellees had certainly contributed substantially to the failure to proceed to trial. "There is really no reason for the courts to free an accused simply because a dilatory prosecutor has 'gone to sleep at the switch' (no reference to counsel in this case) while the defendant and his counsel rest in silence," *Murdock v. State, supra,* quoting *State v. McTague,* 173 Minn. 153, 216 N. W. 787 (1927), or, by their conduct, waive the right to a speedy trial. We hold that the appellees' course of action was such as to constitute a waiver of such rights they may have had to a trial before May 24, 1966 and that the delay was not unreasonable or oppressive or purposeful on the part of the State. The right to a speedy trial does not preclude the rights of public justice. *Beavers v. Haubert, supra.* Of course, upon remand, the appellees will be entitled to a prompt and speedy trial, if they request one.

> *Order dismissing the indictment reversed, and case remanded for further proceedings.*