# CHARLES R. HOLTMAN *v.* STATE OF MARYLAND

[No. 524, September Term, 1970.]

*Decided June 4, 1971.*

The cause was argued before MURPHY, C. J., and ANDERSON and POWERS, JJ.

*Marshall H. Feldman* for appellant.

*John P. Stafford, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Howard L. Cardin, State's Attorney for Baltimore City, Charles Hennick* and *Gary Melick, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

POWERS, J., delivered the opinion of the Court.

Church-going is considered by most people to yield beneficial results. Charles R. Holtman undoubtedly takes the opposite view. On October 17-18, 1968 he went to three churches in Baltimore, with the result that in a bench trial before Judge David Ross in the Criminal Court of Baltimore in April, 1970, he was convicted on one count each of three separate criminal indictments. From those convictions and the sentences imposed in each case he appealed.

### Berkley Baptist Church

At about 1:30 P.M. on October 17, 1968 Helen Gibson, who was employed in the office of the Berkley Baptist Church was winding up her work preparatory to leaving when appellant appeared at the door, carrying a long stick, and said "I want your money." He told her he was an escaped murderer and if she behaved she would be all right. He ordered her to lie on the floor, and asked for her pocketbook. She told him where it was, and he took her money, approximately $3.00, from it and put it back. He went upstairs, and she escaped and notified the police.

On these facts indictment 5197 charged Holtman with robbery, assault with intent to rob, assault, larceny, and receiving stolen goods. He was convicted of robbery. He contends that the evidence did not justify the conviction because (a) the victim was not put in fear and (b) the money was not taken from her person. That the victim's compliance with appellant's order to lie down and his demand for her pocketbook resulted from fear of violence is too obvious to require discussion. In *Williams v. State,* 7 Md. App. 683, 256 A. 2d 776, we said at page 685, quot-

ing from Clark and Marshall, *Crimes,* (6th ed.) § 12.09, that robbery is:

> "the felonious taking and carrying away of the personal property of another, from his person or in his presence, by violence, or by putting him in fear."

The pocketbook was "in her presence", and the evidence was sufficient to sustain the conviction of robbery.

### Hillsdale Methodist Church

Charles Tracey, custodian of the Hillsdale Methodist Church, testified that he left the church at about four o'clock on October 17, 1968. The doors were locked and the premises were secure. He returned about 6:30 and opened a door. Some children ran in and promptly returned, saying that there was a burglar upstairs. Tracey went up and saw a big hole in the door of the minister's study. Appellant appeared at the hole, then came through it, where Tracey confronted him. After some conversation, during which appellant said he was looking for money, Tracey told him not to go away, but while Tracey was making a telephone call, appellant disappeared. The police arrived shortly thereafter. The desk drawers in the study had been pulled out. Tracey testified that a basement window had been broken, and that appellant said he came in through it.

On these facts indictment 5199 charged appellant with daytime housebreaking, rogue and vagabond, storehouse breaking ($100 and upwards) and storehouse breaking (less than $100). At the close of the State's evidence the judge granted a motion for judgment of acquittal as to the two storehouse breaking counts. Appellant was convicted of daytime housebreaking.

We held in *Sizemore v. State,* 10 Md. App. 682, 272 A. 2d 824, at page 689:

> "One who breaks a church in the day or night with intent to commit murder or felony therein, or with intent to steal goods of the value of

$100 or more is guilty of the storehouse breaking proscribed by Code, Art. 27, § 32. * * * But a person who breaks a church is not guilty of the statutory burglary proscribed by Code, Art. 27, § 30 (a) or the crime proscribed by § 30 (b) because a necessary element of those offenses is that it be a dwelling house that be broken and a church is not a dwelling house."

In *Sizemore,* decided January 8, 1971, Judge Orth for this Court discussed the "quaint turn" by which Lord Coke referred to a church as the mansion-house of God, and pointed out that breaking into a church was burglary at common law, not on the ground that a church was the dwelling house of God, but as a separate kind of burglary not involving a dwelling house.

The motion for judgment of acquittal as to this indictment should have been granted.

### St. William of York Roman Catholic Church

Officer Larry Sachs testified that at about 12:50 A.M. on October 18, 1968 he "received a call for prowler", and went to the rear of St. William of York Church. He found appellant "coming out of a window" of the church. Appellant was intoxicated and the officer had to help him out because "he was stuck in the window". A search disclosed nothing; they had no conversation.

On these facts indictment 5198 charged appellant in four counts: common law burglary, rogue and vagabond, storehouse breaking ($100 and upwards) and storehouse breaking (less than $100). At the beginning of the trial the State announced that it would "abandon the first count and press the second count". At the close of the State's case the judge granted a motion for judgment of acquittal as to the third and fourth counts. Appellant was convicted on the second count of being a rogue and vagabond.

The Maryland rogue and vagabond statute (Code, Art. 27, § 490) was discussed and interpreted in *Crossland v. State,* 252 Md. 70, 249 A. 2d 153, in the light of the

"unusual circumstances" there presented. Crossland had been observed by a police officer walking out the front door of a house carrying a record player and a radio. After some inquiry at the house the officer pursued Crossland and arrested him. A four count indictment resulted. At his trial a verdict was directed as to three of the counts because of a technical failure of proof, and he was convicted of being a rogue and vagabond. The Court of Appeals said, at pages 73 and 74:

"The language of Section 490 indicates that it is an essential element of the statutory crime that the accused have the intent to *commit* a crime. * * * [The] language indicates that it is the contemplated commission of the specified crimes which is referred to in the statute. * * * We believe that the normal usage of this language implies the mental processes preliminary to the actual doing of or *completion* (emphasis added) of a particular act. * * * the beneficial and useful purpose of this important statutory provision * * * is to give the enforcement officers a tool to apprehend and suppress more aggravated criminal conduct *prior* to its actual commission.

"* * * The taking of the chattels by Crossland and their asportation were clearly established by the evidence. In other words, the substantive crime had in fact been committed by Crossland and under these unusual circumstances, the necessary intent 'to enter' or 'to steal' no longer existed; the substantive crime was a *fait accompli.*"

Since the holding in *Crossland* we have been called upon in a number of cases to delineate the boundaries of its applicability. The cases were fully reviewed in *Downes v. State,* 11 Md. App. 443, 274 A. 2d 663. In *Downes* the breaking was shown, and it was held proper to infer that the intent to steal, not consummated, still existed. The

situation in *Knight v. State,* 7 Md. App. 282, 254 A. 2d 379, was similar.

It seems clear that when any part of the substantive crime remains incomplete, from the practical as well as the legal standpoint (*Matthews v. State,* 8 Md. App. 712, 715, 261 A. 2d 804) the intent to complete it which may be inferred from the circumstances is sufficient to support a conviction under the rogue and vagabond statute.

The evidence showing that appellant was found on the premises of the church, and that the substantive crime was not completed, supports an inference that he still entertained an intent to steal goods and chattels in the church. His motion for judgment of acquittal on the rogue and vagabond count of indictment 5198 was properly denied.

> *Judgments affirmed as to indictments 5197 and 5198.*
> *Judgment reversed as to indictment 5199.*